| CIVIL ACTION COVER SHEET | DOCKET NUMBER 20 0627 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): Joseph McGillicuddy | COUNTY Norfolk |
|---|---|
| ADDRESS: 5 Beacon Street Quincy, MA 02169 | DEFENDANT(S): Massachusetts Bay Transportation Authority |
| ATTORNEY: Rebecca Royer, Sinlaw, LLC | |
| ADDRESS: 46 South Main Street Sharon, MA 02067 | ADDRESS: 10 Park Plaza Boston, MA 02116 |
| BBO: 692337 | |

RECEIVED & FILED
2020 JUL -7 AM 10:25
CLERK OF THE COURTS
NORFOLK COUNTY

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Employment Discrimination | F | ☒ YES ☐ NO |

*If "Other" please describe:

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ........... $ _____
  2. Total doctor expenses ........... $ _____
  3. Total chiropractic expenses ........... $ _____
  4. Total physical therapy expenses ........... $ _____
  5. Total other expenses (describe below) ........... $ _____
     Subtotal (A): $ _____
B. Documented lost wages and compensation to date ........... $ _____
C. Documented property damages to dated ........... $ _____
D. Reasonably anticipated future medical and hospital expenses ........... $ _____
E. Reasonably anticipated lost wages ........... $ 80,000.00
F. Other documented items of damages (describe below) ........... $ 300,000.00
Punitive Damages

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F): $ 380,000.00

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

TOTAL: $ 380,000.00

Signature of Attorney/Pro Se Plaintiff: X /s/ Rebecca Royer                Date: Jul 6, 2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X /s/ Rebecca Royer                Date: Jul 6, 2020

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT

NORFOLK, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:

20 0627

| | |
|---|---|
| JOSEPH MCGILLICUDDY,<br>Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY,<br>Defendants. | )<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Joseph McGillicuddy, by and through his counsel, alleges as follows:

### Parties

1. Plaintiff Joseph McGillicuddy is an adult resident of Quincy, Massachusetts.

2. Defendant Massachusetts Bay Transportation Authority ("MBTA") is a legislatively created entity, under Massachusetts General Laws, Chapter 161A, with a principal place of business at 10 Park Plaza, Boston, MA 02116.

### Jurisdiction and Venue

3. On January 7, 2020, Plaintiff filed a Complaint of Discrimination against the MBTA with the Massachusetts Against Discrimination ("MCAD") pursuant to G.L. c. 151B, §5.

4. On April 20, 2020, Plaintiff filed a Withdrawal Form with the MCAD, indicating that he wished to pursue a private right of action in civil court.

5. MCAD granted Plaintiff's request for withdrawal on May 29, 2020. See Exhibit A.

6. This Court has subject matter jurisdiction pursuant to G.L. c. 212, §3.

1

7. This Court has personal jurisdiction over the MBTA because it's principal place of business is within the Commonwealth, it does substantial business within the Commonwealth, and this dispute arises out of its contacts with the Plaintiff in the Commonwealth.

8. Venue is proper in this Court pursuant to G.L. c. 223, §1, because Plaintiff resides in Norfolk County.

**Factual Allegations**

9. In 2017, Plaintiff applied for employment with the MBTA for the position of Part-Time Bus Operator via the MBTA Job Lottery.

10. In April 2019, Mr. McGillicuddy was notified via email that his number had been reached in the 2017 MBTA Job Lottery and he appeared for required testing at the Transportation building on May 10, 2019.

11. On May 21, 2019, Mr. McGillicuddy completed his Bus Operator Interview and Workforce Assessment at the Bus Transportation Training School at the Charlestown Garage.

12. Mr. McGillicuddy is missing his lower right arm. He does not ordinarily wear a prosthetic, but he does own one and can use it if it is necessary.

13. During the Workforce Assessment, one of the actions he was requested to perform was to hold two flags, one in each hand, to signal in the event of an emergency. Because of his missing lower arm he was not able to hold both flags in the requested way.

14. Although Mr. McGillicuddy does own a prosthetic, he does not ordinarily wear it on a daily basis and he did not wear it to the Workforce Assessment because he did not

2

anticipate that it would be required. Mr. McGillicuddy was not informed before the Assessment of what actions would be included on the Workforce Assessment.

15. Mr. McGillicuddy was also not informed at the time of the Assessment that his failure to hold the flags in the requested way would be fatal to his application, and in fact his application appeared to be proceeding through the standard process after the Assessment despite that issue.

16. After he completed the Assessment on May 21, he received a conditional offer of employment subject to his supplying a valid driver's license, Yale & CORI form, and a valid Class B Commercial Learner's Permit with certain endorsements.

17. On June 7, 2019, Mr. McGillicuddy appeared for his pre-employment physical at the MBTA's Occupational Health Services Department. On that date he agreed to an additional "skills performance evaluation" requested by the MBTA regarding his suitability for the job in light of his missing lower right arm.

18. On June 18, 2019, Dr. David Winnick, an orthopedic surgeon, saw Mr. McGillicuddy for the evaluation requested by the MBTA and completed a "Medical Evaluation Summary" of the visit. On the day of his evaluation with Dr. Winnick, Mr. McGillicuddy was again not wearing his prosthetic device because, as mentioned above, he does not ordinarily wear his prosthetic for daily use, and because at that time he was being re-fitted for a new model of prosthetic.

19. According to Mr. McGillicuddy's memory of the medical evaluation, Dr. Winnick asked Mr. McGillicuddy if he used a prosthetic for driving and Mr. McGillicuddy answered that he did not. This was because, in fact, Mr. McGillicuddy does not ordinarily use his

prosthetic when driving his personal car. Dr. Winnick did not ask Mr. McGillicuddy if he could use a prosthetic if one were required.

20. In his summary of that medical evaluation Dr. Winnick noted that Mr. McGillicuddy had a congenital absence of his lower right arm, and that he "doesn't use/need prostheses."

21. On July 2, Mr. McGillicuddy received a telephone call from someone in the MBTA's Human Resources Department informing him that he would not be eligible for the position of Part-Time Bus Operator because he had failed the "flag waving" portion of the Worforce Assessment that he had completed on May 21. The MBTA employee explained that holding two flags in the required manner was an essential part of the job.

22. At this time, he was not told that he had failed any other portion of the Workforce Assessment.

23. On or about July 29, 2019, Mr. McGillicuddy had a conversation with David Hollis in the MBTA Human Resources Department regarding the possibility of reasonable accommodations for the bus driver position. During that call Mr. Hollis expressed skepticism that Mr. McGillicudy would ever be able to satisfy the prerequisites for the position and he was encouraged to apply for different positions at the MBTA instead.

24. After receiving a letter from Mr. McGillicuddy's attorney on September 30, 2019, regarding Mr. McGillicuddy's ability to use a prosthetic, Mr. Hollis at the MBTA contacted Mr. McGillicuddy to inform him that he had been permitted to retake the Workforce Assessment on October 8, 2019, to allow him the opportunity to use his prosthetic.

25. On Oct. 8, Mr. McGillicuddy arrived for the second Workforce Assessment, this time with his prosthetic.

4

26. Before the Assessment began he asked the two officials in attendance whether he should use the prosthetic for the entire assessment or just for the parts where he needed it. The two officials in attendance did not immediately know how to answer his question and seemed confused by it. They spoke with each other outside of Mr. McGillicuddy's hearing, then called someone on the phone and spoke on the phone for a short period, also outside of his hearing.

27. Eventually the two officials returned to Mr. McGillicuddy and told him to use the prosthetic where he saw fit.

28. Mr. McGillicuddy completed the Assessment and chose to use the prosthetic for the only task that he felt that he couldn't complete without it—the flag-holding part of the assessment that he had failed on his previous attempt.

29. On November 11, 2019, Mr. McGillicuddy was notified, by phone call from David Hollis to his attorney, that he had "failed" his October 8, 2019, Workforce Assessment because he had completed some of the required tasks with one hand instead of two.

30. Mr. Hollis explained that he had successfully completed the flag-holding portion of the assessment on the October 8 re-take. But he was marked as having failed task number 25, "properly guides trolley poles up to catenary wires using both hands," and task number 26, "rewind trolley pole using both hands." For each of those two tasks, the person monitoring the assessment indicated that Mr. McGillicuddy did successfully complete the actions requested - but did so using one hand and not two.

31. No one had indicated to him that he had failed tasks 25 & 26 in his previous Workforce Assessment on May 21, 2019, when he did not have his prosthetic with him and when he completed those same tasks with one hand.

32. Mr. Hollis was unwilling to engage in further discussion regarding potential reasonable accommodation or evaluations during the November 11, 2019 phone call, suggesting only that Mr. McGillicuddy's attorney might try sending him another letter.

33. Mr. Hollis failed to respond to additional written requests regarding this issue from Mr. McGillicuddy's attorney.

34. At this point in the employment application process, Mr. McGillicuddy has in fact demonstrated to the MBTA that he can successfully complete all of the tasks required on the Workforce Assessment, doing some with one hand instead of two where he judged that was feasible.

## COUNT ONE
### Discrimination under G.L. c. 151B, §4(16)

35. Plaintiff re-alleges and re-asserts the allegations in the above paragraphs as if fully set forth herein.

36. Under Massachusetts law, G.L. c. 151B, §4 (16), an employer is prohibited from refusing to hire a qualified handicapped person who is able to perform the functions of a job with a reasonable accommodation, unless allowing such accommodation would impose an undue hardship for the employer.

37. Mr. McGillicuddy is disabled for purposes of G.L. c. 151 B, §4 (16) because he is missing the lower part of his right arm.

38. Mr. McGillicuddy has demonstrated that he is qualified for the job of Part-Time Bus Operator by successfully completing all of the tasks required on the Workforce Assessment, doing some with one hand instead of two where he judged that was feasible.

39. Defendant MBTA, through its actions in refusing to hire Mr. McGillicuddy, has discriminated against him based on his disability in violation of G.L. c. 151B, § 4 (16).

40. Defendant's stated reason for refusing to hire Mr. McGillicuddy--because he has "failed" the Workforce Assessment because he sometimes used one hand--is pretextual, as evidenced by the facts that (1) before Mr. McGillicuddy began the second Assessment he specifically inquired about whether he should use his prosthetic for the entire assessment and was told to use it only when he needed it, and (2) he did not fail tasks 25 & 26 in his previous Workforce Assessment on May 21, 2019, when he did not have his prosthetic with him and completed those tasks successfully with one hand.

41. Defendant's discriminatory conduct was outrageous and egregious. Defendant persisted in refusing to engage in discussions regarding reasonable accommodations with Mr. McGillicuddy after repeated efforts by Mr. McGillicuddy and Mr. McGillicuddy's attorney. Defendant's modification of the requirements of the Workforce Assessment over the course of multiple administrations evidences the intent to exclude Mr. McGillicuddy solely because of his disability, and Defendant was aware that doing so would cause harm to Mr. McGillicuddy by preventing him from being hired.

42. As a result of Defendant's outrageous and egregious discriminatory conduct, Plaintiff has suffered and continues to suffer harm.

## COUNT TWO

**Violation of the Americans with Disability Act (ADA), 42 U.S.C. § 12101 et seq.**

43. Plaintiff re-alleges and re-asserts the allegations in all of the preceding paragraphs as if fully set forth herein.

44. Under Title I of the ADA, it is unlawful for an employer to discriminate against qualified individuals with disabilities in the job application process.

45. Mr. McGillicuddy is disabled under the ADA because he is missing the lower part of his right arm.

46. Mr. McGillicuddy has demonstrated that he is qualified for the job of Part-Time Bus Operator by successfully completing all of the tasks required on the Workforce Assessment, doing some with one hand instead of two where he judged that was feasible.

47. Defendant MBTA, through its actions in refusing to hire Mr. McGillicuddy, has discriminated against him based on his disability in violation of the ADA.

48. Defendant's stated reason for refusing to hire Mr. McGillicuddy--because he has "failed" the Workforce Assessment because he sometimes used one hand--is pretextual, as evidenced by the facts that (1) before Mr. McGillicuddy began the Assessment he specifically inquired about whether he should use his prosthetic for the entire assessment and was told to use it only when he needed it, and (2) he did not fail tasks 25 & 26 in his previous Workforce Assessment on May 21, 2019, when he did not have his prosthetic with him and completed those tasks successfully with one hand.

49. Defendant's discriminatory conduct was outrageous and egregious. Defendant persisted in refusing to engage in discussions regarding reasonable accommodations with Mr. McGillicuddy after repeated efforts by Mr. McGillicuddy and Mr. McGillicuddy's attorney. Defendant's modification of the requirements of the Workforce Assessment over the course of multiple administrations evidences the intent to exclude Mr. McGillicuddy solely because of his disability, and Defendant was aware that doing so would cause harm to Mr. McGillicuddy by preventing him from being hired.

50. As a result of Defendant's outrageous and egregious discriminatory conduct, Plaintiff has suffered and continues to suffer harm.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests:

1. Damages in an amount to be determined at hearing including punitive damages, damages for lost pay, out-of-pocket expenses and other monetary losses;

2. Costs and attorneys' fees; and

3. Such other legal or equitable relief as the Commission may award.

## DEMAND FOR JURY TRIAL

4. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
JOSEPH MCGILLICUDDY
By counsel:

*/s/ Rebecca Royer*

Rebecca Royer (BBO# 692337)
broyer@slnlaw.com
Rebecca N. Rogers, Esq. (BBO#671111)
rrogers@slnlaw.com
slnlaw llc
46 South Main Street
Sharon, MA 02067
781-784-2322

Dated: July 6, 2020